### JAMES E. BEACH v. STATE.

No. A-4532.   Opinion Filed April 20, 1924.
(225 Pac. 187.)

(Syllabus.)

1.  **Appeal and Error—Affirmance—Absence of Briefs and Argument.** In a homicide case where the defendant appeals from a judgment of conviction and no briefs are filed or argument presented, this court will make an examination of the case-made, and, if no error is apparent, will affirm the judgment.

2.  **Homicide—Evidence Sustaining Conviction of Manslaughter in Second Degree.** In a prosecution for murder, evidence held to sustain a conviction of manslaughter in the second degree.

Appeal from District Court, Kiowa County; Thos. A. Edward, Judge.

James E. Beach was convicted of manslaughter in the second degree, and he appeals. Affirmed.

Keys & Rakestraw, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

DOYLE, J. The plaintiff in error was convicted of manslaughter in the second degree and his punishment was fixed by the jury at imprisonment in the penitentiary for a term of three years, for having shot and killed William E. Sexton. He has appealed from the judgment rendered upon such conviction to this court, but there has been no appearance in his behalf on his appeal.

The assignments of error relate to rulings of the court in the admission and exclusion of evidence, instructions given to the jury, and the sufficiency of the evidence to sustain the verdict.

The evidence shows that James E. Beach, defendant, and William E. Sexton, deceased, occupied farms in the same neighborhood in Kiowa county; that deceased, his wife, and two sons, with other neighbors, attened a dance at defendant's home on the evening of April 21, 1922; that about midnight some refreshments were served. What took place from that time is related by the wife of the deceased substantially as follows:

Mr. Beach was sitting at the table; my husband was standing by the table and remarked to Mr. Beach, "Don't eat all of those doughnuts, I want one of them." Mr. Beach said, "I don't know whether you will get a damn one of them or not," and he held his gun up in his hand; my husband took his gun out, and I took hold of him and said, "Come on; let's go home," and I pushed him off into the other room and his gun fired. Within two or three minutes Mr. Beach followed us and fired three shots; my husband fell to the floor. Mr. Beach kicked my husband, and he said, "Don't

pour it on me Jim because you got me down.'' Mr. Beach said, ''Raise up, Ed, and take it like a man; you are not hurt; I have seen lots of people worse hurt than you are get well.'' We undressed him and put him on the bed and phoned for a doctor; after the doctor arrived we got Mr. Beach's team and wagon and Mr. Beach, his wife, and his niece helped us to put him on the wagon and they went home with us and helped us to take him out of the wagon and carry him into the house. My husband and Mr. Beach were both intoxicated.

Dr. J. A. Land testified:

''I am a practicing physician at Lone Wolf; James E. Beach, defendant, called me over the phone to come to his house; I went there and found Sexton lying on the bed; when I examined him I found that he had been shot in the left side; the wound penetrated the spleen; he was also shot in the middle of the thigh and the bone broken about four inches below where the bullet entered; I dressed the wounds and put a splint on his leg and helped remove him on a cot to a wagon. I was present the next day when he made a statement at the request of the county attorney; I had told him that I thought he was going to die; I wanted him taken to the hospital; he said there was not any use in going to the hospital, that he was going to die anyhow.''

A signed statement of deceased, witnessed by the county attorney and others was introduced in evidence, in part as follows:

''Jim Beach phoned me about 6 o'clock to come over that night and we would have some whisky and dancing; we were the best of friends for six or seven years; I went down to the dance and my wife and two sons went with me; we had a good time until about 1:30 a. m., and then I joked him about some doughnuts; I said, 'Don't eat all those doughnuts;' then he jumped up and pulled his gun, a 38 automatic; I walked into the front room near the dresser and Jim Beach

followed me and shot at least three times; I am not sure whether I shot or not, but if I did I must have shot after I was down. It seems my leg gave away and I fell to the floor. I then told him to finish up the deal; he had killed me. He said, 'Oh, God damn you you are not dead; I saw them in worse shape than that get well,' or that in substance.''

The officers testified that they found 11 one-half gallon jars, containing whisky, in the cellar of the defendant the next day after the shooting.

On the part of the defense, B. C. Walker testified:

"I was sitting by the side of Mr. Beach at the table; I heard a shot fire in the west room; Mr. Beach went to the middle door and as I went out I heard four, five, or six shots.''

Annabelle Wilson testified:

"James E. Beach is my uncle; uncle James was sitting at the table drinking buttermilk; Mr. Sexton told him to drink sweet milk and he said he would not; he would have what he wanted in his own home. Mr. Sexton got mad, and I helped Mrs. Sexton take Mr. Sexton into the other room. I held his left arm and Mrs. Sexton the right. I saw the flash of the gun and grabbed his hand and pushed it down as the gun fired then somebody pushed me out the south door; just as quick as Mr. Sexton fired another gun was fired four times.''

The testimony of the defendant in his own behalf as to the circumstances attending the shooting is as follows:

"Well, we were talking about the milk; he wanted me to drink sweet milk and I wanted buttermilk. I never saw him draw any gun, if he had a gun I did not know it and I did not draw any gun at that time; I was sitting at the north end of the table; I heard the shot and saw the flash of the pistol; my gun was in the top drawer of the cabinet right behind me; I pulled this drawer out, grabbed my gun and stepped to the door, just about the time I got to the door

he was standing with his gun drawn on me and he fired again and I shot four times; I fired them all before he fell; I was trying to protect myself, but I did not aim to kill him; I went to the dresser in that room and lit the lamp; as I walked back by him he was raising his gun up and I kicked his hand; he dropped the gun then picked it up, and Mrs. Sexton took it away from him; while he was down he said, 'You got me down, Jim, but if I ever get up my time will come;' and he said, 'You have shot me, Jim; I wish you would finish me up,' or something like that. I says, 'Ed, maybe you ain't hurt as bad as you think you are; maybe you will get all right.' I went to the phone and called Dr. Land, and the doctor came and dressed his wounds; I helped to lay him in the wagon and take him home; I was drinking that night, but I could not say that I was really drunk. Mr. Sexton brought the whisky there in a half gallon jar, almost full.''

The testimony in this case is very voluminous, covering several hundred pages, but the foregoing statement is sufficient for the purpose of this opinion.

While the defendant is not represented by counsel in this court, we have with much care examined this voluminous record and find no error justifying a reversal.

It appears that some exceptions were taken to the rulings of the court in the admission and conclusion of evidence, but we are of the opinion that none of them were well taken. Upon a consideration of the instructions given we are of the opinion that the law of this case was fairly and fully presented.

In conclusion we simply add that, while there is a direct conflict in the testimony for the state and that for the defense, it was for the jury to judge of the weight of the evidence and the credibility of the witnesses.

Upon the whole case it appears to us that the defendant had a fair trial, and the evidence is abundantly sufficient to warrant the verdict of the jury.

The judgment of the lower court is accordingly affirmed.

MATSON, P. J., and BESSEY, J., concur.